THE ETHELWOLD.

(District Court, E. D. New York. November 14, 1908.)

1. MARITIME LIENS (§ 62*) — ENFORCEMENT IN ADMIRALTY—PARTIES—RIGHT OF OTHER CREDITORS TO DEFEND.
    In proceedings in rem in admiralty to enforce maritime liens on a vessel, any creditor of the claimant desiring to contest the claim of any lien claimant must appear in the cause and do so by answer and on the reference.
    [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 100; Dec. Dig. § 62.*]

2. ADMIRALTY (§ 101*) — SALE OF VESSEL — PROCEEDS—DECREE IN PERSONAM— WAIVER OF LIEN.
    The libelant in a suit in admiralty against a vessel and the owner, after the vessel had been sold and the proceeds paid into court, and after intervening libels asserting maritime liens had been filed, proved its claim and took a decree in personam only against the owner of the vessel, making no opposition to the claims of the intervening libelants. *Held*, that as against them it waived its right to assert a lien on the fund in court and elected to look to the owner alone, and that such election also bound an insurer entitled to succeed to libelant's rights by subrogation.
    [Ed. Note.—For other cases, see Admiralty, Cent. Dig. § 684; Dec. Dig. § 101.*]

In Admiralty.

Ralph James M. Bullowa, for Cuba Planters' Co.

Robinson, Biddle & Benedict (E. G. Benedict, of counsel), for John N. Robins Co.

CHATFIELD, District Judge. The Cuba Planters' Company, a fruit raising corporation, filed a libel against the steamer Ethelwold and her owners, in this court, upon January 17, 1908, for damages caused by the loss of certain bananas jettisoned at the time of the stranding of the steamer while under charter to carry a cargo of bananas for the libelant. This action resulted in a default and the entry of an interlocutory decree against the steamer and the company, under which decree the steamer was sold, and the proceeds, amounting to $3,-750, deposited in the registry of this court. Subsequently thereto a final decree was entered against the North American Steamship Company, Limited, but not against the steamship Ethelwold, although both were made parties defendant in the libel. The question of the validity of a maritime lien for the jettisoning of cargo was thus avoided.

It is suggested that the reason why a judgment in personam, and not in rem, was sought, was that a policy of insurance against the exact loss which occurred by the jettisoning of the cargo had been taken out by the steamship company in favor of the libelant, and it is also suggested that the libelant purposely sought to exhaust the security upon

this policy first, in order to enable the surety company (which stood ready to pay this insurance) to reimburse itself by claiming subrogation and pursuing the action in rem against the steamer. If such were the plan, it was interfered with by the filing of four libels for supplies, repairs, and wharfage. These libels were filed January 28, 29, and 30, 1908, respectively. One of them, that of the Robins Company, has proceeded to a reference, and, no opposition having been made, the commissioner has found that the libelant, the Robins Company, is entitled to the sum of $6,725.61. The three other claims do not seem to be disputed, and they have been assumed to be correctly stated at $187.51, $349.62, and $74, respectively. The four libelants in these last-mentioned libels have agreed upon a decree proportionately dividing the surplus for the payment of their claims, and ask that the fund be awarded to them, and that the claim of the Cuba Planters' Company, so far as it concerns the vessel, be adjudged to have been lost by default. This would leave the Cuba Planters' Company to their judgment in personam, and to the reimbursement afforded by the bond of the surety company, up to the amount of $2,800. This, in turn, would leave the surety company out of pocket unless they obtained security in the first instance from the owners of the vessel before insuring the cargo. On the other hand, the libelants claim that they are not in default, that they are entitled to a decree in rem as well as in personam, and that if, through an outside arrangement, security was given to the Cuba Planters' Company, in the form of insurance to the owners of the vessel, for a particular purpose, then a payment by the surety company, accompanied by an assignment of the libelants' cause of action in admiralty, would still leave the libelant or its assignee in a position where it could demand the entry of a decree in rem. The Cuba Planters' Company, or its assignee, likewise claims the right, even if no more than as a general creditor, to oppose the claims of other libelants, and asserts that it was entitled to notice of the hearing upon those references.

It will be well to determine the last question first, and this question is important, inasmuch as the argument is presented that if libels were filed on behalf of certain creditors, and the general creditors of the claimant were not allowed to contest the libels, the claimant might cause a preference by defaulting and enabling the libelant to obtain judgment in rem for the full amount of his claim. This argument is of some force when the situation under consideration is that of creditors of a bankrupt, or, in other words, in a situation where the bankruptcy court would have jurisdiction to prevent preferences voidable under the bankruptcy law; but the record here shows no such situation, and it seems necessary to hold, in order to make maritime liens of any use whatever, that objecting creditors must appear and oppose, by answer, claims filed under a libel, if they wish to preserve their rights, without reference to what the claimant or debtor may do in admitting the claim sought to be enforced by the proceeding in admiralty. In the present case each creditor who had a maritime lien, enforceable against the vessel, had a right to attack the allowance and payment of any other lien, but, if he wished to dispute the amount of that allowance, he

must appear in the action or on the reference and contest the libelants' claim. This was not done on behalf of the Cuba Planters' Company, although notice was given of the hearing to compute the amount due under the libel for wharfage, and the amount of that award could have been questioned only by exceptions filed within the term.

The four libelants who have entered decrees in rem, however, cite the cases of The Williamette Valley (D. C.) 76 Fed. 838, and The Evangel (D. C.) 94 Fed. 680, as authority for the proposition that neither the surety company nor the owner of the vessel was entitled to succeed to any rights of the Cuba Planters' Company as their rights existed at the time of the libel. Both of the cases cited arose from the giving of a bond by a claimant, subsequent to the filing of a libel, to secure the release of a vessel, and in each case an attempt was made to claim a maritime lien because these bonds became due and had been enforced. It was properly held in each case that no maritime lien could attach to a vessel, after a sale, for any cause of action existing before the sale, nor to the fund which took the place of the vessel. The fundamental idea of a proceeding in rem is the right to seize the res, and if that res has been released for certain purposes by the giving of a bond, then no other purpose could be included within the claims released. Any other maritime lien would have to be enforced against the vessel itself, and thus create another fund, if the vessel were again released under bond or by sale. But it does not seem that this doctrine has anything to do with the present situation. The bond given by the surety company was purely and simply one of insurance. The insurers upon a payment of their loss were entitled to subrogation, and subrogation means that they were entitled to be put in the shoes of the person to whose rights they were subrogated. In the present case, there having been no satisfaction of the decree in personam, no assignment in writing of that decree, or the claim, the insurance company is merely, with the consent of the libelants, endeavoring to enforce the libelants' rights, in order to prevent the payment of its insurance, and the situation does not arise of a possible second payment of the claim. It is rather the question whether an insurance company can advance the money upon its policy, and then elect whether to (1) make a demand upon the person who has contracted with it for the policy, or (2) realize upon collateral if it has it, or (3) attempt to enforce the original liability for which it has become a surety. Under the present circumstances this third course would seem to be the one chosen, and the insurance company, if it is the moving party upon the present application, has demanded the enforcement of a lien existing in admiralty before the sale of the vessel, but as to which lien this insurance or surety company had agreed to stand as guarantor in the case of loss. Or, to state the matter in still a different way, the insurance company originally promised to guarantee whatever amount of loss, up to the sum of $2,800, could not be collected through ordinary legal channels, and it now contends that it cannot be compelled to relinquish any rights by which this loss could be made as small as possible, admitting it is responsible, up to the amount of $2,800, for anything that cannot be recovered. On this aspect of the case the libelant would

seem to be entitled to a decree in rem, if the libelant were not in default in the action itself.

But the libelant subsequent to the sale, subsequent to the determination by the commissioner of the amount of the libelant's damages, and subsequent to the filing of the other libels, entered a decree, on the 18th day of February, 1908, in which the sale of the vessel was recited, the amount found due by the commissioner was decreed to the libelant, the report of the commissioner confirmed, and a judgment in personam against the North American Mail Steamship Company, Limited, and its right, title, and interest in the proceeds of sale of the steamship Ethelwold, was docketed for the sum of $2,637.88, with interest and costs. The libelant, knowing that other libels had been filed against the vessel, that other decrees could be entered, and making no move to interfere with those decrees nor to oppose the claims on which they were based, may fairly be considered to have elected to look to the claimants of the steamer, and to leave the proceeds of the sale for distribution among other libelants. If such an election was made, it is now too late for the insurance or surety company to say that they were entitled to prevent such an election. They must be held to have known of the situation, and should have intervened or in some way attempted to prevent the libelants' release of the proceeds of the sale for the payment of the other libels. The sale was had under an interlocutory decree in rem, the judgment entered was based upon the action in personam, and the present motion to be allowed to enter a decree in rem cannot be granted.

If a decree were to be entered, the order of payment would give the claims for repairs and wharfage priority as well, and again the Cuba Planters' Company would have no rights which could result in payment of any of the fund to it, and the result would be the same.